## MEYER v. KALKMANN.

Under the provision of the Constitution, giving to the Legislature the power "to establish such municipal and other inferior Courts as may be deemed necessary," the Courts thus created could only be of inferior, limited, and special jurisdiction.

The Superior Court of the city of San Francisco, which was created under the power so given, is a municipal Court, whose jurisdiction must necessarily be confined to the municipal territory; and the Act giving it the power to extend its jurisdiction, so as to let its process run beyond its territory, is invalid.

APPEAL from the Superior Court of the City of San Francisco.

On April 14th, 1856, the plaintiff filed his complaint, alleging a co-partnership between himself and defendant, under the firm name of P. Kalkmann & Co., and that defendant had been guilty of misconduct in the management of the partnership affairs, and that he was insolvent individually, and as a member of the firm. The bill prays for an account and distribution and the appointment of a receiver. On the same day an order was entered appointing James Bell receiver, and his bonds were approved and filed early in the same day. Meyer and Kalkmann as well as Bell, telegraphed to Sacramento, where the firm of P. Kalkmann & Co. had a store, informing the clerk of the firm of the appointment of the receiver, and instructing him to close the store and hold the goods for the receiver. After the clerk had received the message and had partially closed the store and commenced to reduce the property into possession, attachments were issued against the firm by various creditors, in actions commenced in the District Court of the Sixth Judicial District, under which William S. White, the sheriff of Sacramento County, entered the store and seized the entire stock of goods of P. Kalkmann & Co., in Sacramento City.

On the following day Bell, the receiver, made formal demand for the

goods upon Sheriff White, who refused to deliver them; whereupon Bell obtained an order in the Court below requiring White to show cause why he should not be committed for taking the property out of the custody of the receiver, and why he should not deliver the same over to the receiver. White appeared under the rule, and protesting against the jurisdiction of the Court, presented counter affidavits to those of the receiver. The question was argued, and the Court made the rule absolute that White should deliver the goods to the receiver within two days. White appealed.

*Eugene Casserly* for Appellant.

*Point I.* By the Constitution of California, the Superior Court of the city of San Francisco is purely a local Court, whose powers and jurisdiction are confined within the territorial limits specified by statute; outside of which it is without authority, or even existence, and all its process and acts are of no effect, and void. The county of Sacramento, where the order to show cause was served upon the sheriff, and where the property is situated, sought to be affected by the order absolute, (now appealed from,) being outside these limits, the order absolute was made without jurisdiction, and is wholly void.

In considering this point it will be useful first to review briefly the history of the organization of the Superior Court; and next to examine what are its powers and jurisdiction within the Constitution.

The Constitution was adopted in November 18, 1849, and on April 5, 1850, the first Legislature which met under it, passed "an Act to establish a Municipal Court in the city of San Francisco, to be called the Superior Court of the city of San Francisco." Laws of 1850, p. 150.

The Superior Court established by that Act was restricted in its jurisdiction to civil cases *within the limits* of the City of San Francisco, (§4); and it had no power to send its process *beyond those limits*, except *writs of subpœna* and its "final process." (§8.)

It was, therefore, not only in name a municipal Court, but substantially a court of limited and local powers and jurisdiction; and this was the original conception of the legislative framers of the Court.

March 11, 1851, an Act was passed "concerning the Courts of Justice of this State and Judicial officers," and respecting the Act of 1850, just quoted, (Laws of 1851, p. 9.) Chapter IV of this Act is devoted to re-organizing the Superior Court of the City of San Francisco. Laws of 1851, p. 15.

A new jurisdiction is conferred: *Original* and *Appellate* (§ 41.)

Section 42 provides:

"Its original jurisdiction shall extend to all civil cases in which the amount in controversy exceeds two hundred dollars exclusive of interest, or which includes the title or possession of real property situated in the city of San Francisco, and its jurisdiction in which cases shall be co-extensive with the jurisdiction of the District Court in the like cases." (p. 15.)

Section 50 provides:

"This Court may send its writs, process and orders out of the city of San Francisco, in the actions and proceedings in which it has jurisdiction by this Act." (p. 17.)

The appellate jurisdiction is quite comprehensive, and illustrates remarkably the unconstitutional heresies of this part of the Act; heresies so obvious to the most common mind that in no single instance were the provisions ever acted upon by any suitor or attorney, and they remained a dead letter until they were blotted out by the Judiciary Act of 1853, which we are next to consider.

That Act was passed *May 19, 1853,* and repeals all former laws on the subject. Chapter IV (Comp. Laws, 173) is devoted to the Superior Court.

Sections 33 and 34 define the jurisdiction and powers of the Court, and are substantially a re-enactment of sections 42 and 50 of the Act of 1851, already quoted, and a continuance of the errors embraced in them. They provide:

"§ 33. This Court shall have original jurisdiction in all civil cases in which the amount in controversy exceeds two hundred dollars, exclusive of interest, or which involves the title or possession of real property situated in the City of San Francisco; and its jurisdiction in such cases shall be co-extensive with the jurisdiction of the District Court in like cases."

"§ 34. This Court and the Judge thereof shall have power to issue all writs necessary or proper to the complete exercise of the powers conferred by this and other statutes, and may send its writs, process and orders out of the city of San Francisco, in the actions and proceedings in which it has jurisdiction by this Act."

It is under these two sections that the Superior Court claims jurisdiction in the present case.

If these sections are constitutional, its claims may be sustained. Not otherwise.

The Constitution of California, Art. 3, Sec. 1, provides:

"The judicial power of this State shall be vested in a Supreme Court, in District Courts, in County Courts, and in Justices of the Peace. The Legislature may also establish such municipal and other inferior courts, as may be deemed necessary."

Section 4 is:

"§ 4. The Supreme Court shall have appellate jurisdiction in all cases when the matter in dispute exceeds two hundred dollars, when the legality of any tax, toll or impost, or municipal fine is in question, and in all criminal cases amounting to felony on questions of law alone," etc.

This grant vests in the Supreme Court the general appellate power of the State, to the exclusion of any other court. Hudson v. Caulfield, in this Court, January Term, 1854, referred to and approved, Reed v. McCormick, 3 Cal. R., 342.

Meyer *v.* Kalkmann.

The appellate power vested in county courts by Sec. 14, is limited to cases from Justices' Courts, all which are under two hundred dollars.

Having disposed of the general appellate power, the Constitution proceeds to provide for the general original jurisdiction of the State.

Section 6 is:

"§ 6. The District Courts shall have jurisdiction in law and equity, in all civil cases where the amount in dispute exceeds two hundred dollars exclusive of interest. In all criminal cases not otherwise provided for, and in all issues of fact joined in the Probate Court, their jurisdiction shall be unlimited."

Upon the same principles of constitutional construction as those applied to the Supreme Court, this grant of jurisdiction is also exclusive, subject to the exceptions specified in the Constitution itself, viz.:

1. Cases under $200, of which the jurisdiction is in the Justices' Courts; and

2. "Special cases," so called (§ 9) of which the jurisdiction may be given to the County Courts.

In all other respects the general original civil jurisdiction of the State is vested by the Constitution of the State in the District Courts, to the exclusion of all other Courts. In Wilson *v.* Roach, 4 Cal., 362, this principle was fully asserted; this Court having there declared that by the Constitution the District Courts of the State are invested with all the powers of the English Courts of Chancery over the persons and estates of minors; and that the Legislature has not vested and could not vest such a jurisdiction in the Probate Courts, to the exclusion of the District Courts. *Vide* per Murray, C. J., p. 366.

Thus it appears that the Constitution has vested the general appellate jurisdiction of the State in the Supreme Court; and the general original jurisdiction of the State in the District Courts, each grant being exclusive.

This is the constitutional distribution of the general judicial power, and it leaves no room for an original civil jurisdiction of the general and comprehensive character conferred by statute on the Superior Court.

But it is said that the power to establish this Court is found in the first section of the judicial article, already quoted. The words are:

"The Legislature may also establish such municipal and other inferior Courts as may be deemed necessary."

The words employed, and their collocation to each other and to the rest of the sentence, are, undoubtedly, *ex industria*, and are replete with significance.

The maxim, *noscitur a sociis*, so constantly applied in construing constitutional provisions, is most applicable here. The Constitution had, in the same section and in the sentence just preceding, provided for a Supreme Court, District Courts, County Courts, and Courts of Justices of the Peace. Next it goes on to speak of "municipal and *other inferior* Courts." Lord Bacon says: "*Copulatio verborum indicat acceptationem in eodem sensu.*" Works, Vol. 4, p. 26.

Thus here, the words employed, "municipal and *other inferior* Courts," and their collocation, both as respects the rest of the section and each other—lead irresistibly to the conclusion that "municipal" Courts (being themselves inferior "to County and Justices'" Courts,) and other "inferior courts," of similar grade, but not higher, were alone intended by this section.

The Superior Court of the city of San Francisco must be therefore, either a "municipal Court" of inferior grade and powers, or an "inferior Court," (which is, of course, the same thing, in other words,) of powers and jurisdiction similar to, and not greater than, those usually conferred on a municipal Court.

"Municipal," as applied in the Constitution, (Art. VI, § 1,) to Courts, is a term strictly of jurisdictional limitation. A "municipal" Court means a Court having jurisdiction within the territory of one single *municipium*, or incorporated city. *Vide* 1 Black., Com., 44.

In People *v.* Gillespie, 1 Cal., 342, this Court declared the then Superior Court to be an inferior Court, and therefore not authorized, by its inherent powers, to issue the writ of *quo warranto*.

But if the claim set up against us in this case can be sustained, if the Superior Court may, by one order served in the County of Sacramento upon the Sheriff of that county, obtain jurisdiction of his person, and by another order may dispose of property lying within that county, then that Court has a jurisdiction which opens to it the whole State, and leaves it no longer in any sense, a "municipal" or "inferior" Court. The territorial limitation imposed by the Constitution is broken down, and with it the most essential distinction between it and the District Courts.

The case of Seale *v.* Wardwell *et al.*, decided in this Court, October Term, 1855, is relied on as an authority against us.

It is to be observed that the judgment in that case had reference simply to the single question stated, viz., the constitutionality of a judgment for more than $200, rendered by the Superior Court, organized under the Act of 1850. All the remarks with which the decision was accompanied are to be understood in reference to the same point. The Superior Court organized under the Act of 1850, had a very much more limited jurisdiction than the present Court. It is well known also that under judgments of the Superior Court, for amounts exceeding $200, very large amounts of property had changed hands in the city of San Francisco, and vast interests had grown up under titles thence derived. The Supreme Court in Seale *v.* Wardwell, was unwilling to overthrow rights of property which had thus vested to so great an extent.

Because in Seale *v.* Wardwell, the Supreme Court, in its tenderness for vested rights of property, so far relaxed the rule of sound construction as to decide the Superior Court might constitutionally render a judgment for an amount exceeding $200, it is rather a violent *non sequitur* to argue that it is prepared to sustain the Court in the new jurisdiction which it is attempting now to assert over persons and property in every county in the State.

From all this, it seems to result:

1. That the District Courts of the State are by the Constitution vested with the original common law and equity jurisdiction of the State, and they alone have the power, in a case like the present, to issue their process, writs and orders out of their counties and districts, and to affect persons and property beyond those limits.

2. That the Superior Court has not constitutionally this power; and, therefore,

3. That its order, appealed from, was made without jurisdiction, and attempts to dispose of property out of the territorial limits of the Court, and is, for both reasons, void.

*Point II.* The orders, process and all judicial acts of the Superior Court of the city of San Francisco, have no validity or force for any purpose, outside of the limits of that city.

The order appointing a receiver of the partnership assets was inoperative to affect, in any way, the property in controversy, which was beyond those limits, and in Sacramento county, as against creditors attaching there by process from the Sixth District Court of that county.

If the order was invalid, the assignment made under it could have no greater effect.

If the ordinary process of the Court—its summons, subpœna, execution—without which it cannot move judicially, cannot go outside the city of San Francisco, *a fortiori*, its order, appointing a receiver cannot in any manner affect property outside those limits. Malcolm *v.* Montgomery, 1 Hog., 93. Carteret *v.* Petty, 2 Ca. in Chan., 214. Roberdeaux *v.* Rous, 1 Atk., 543–4.

*Sidney V. Smith* for Respondent.

I. The first question that has been raised by appellant is, that the Superior Court does not appear affirmatively by its record to have had jurisdiction in the action of Meyer *v.* Kalkmann, in which respondent was appointed receiver, and that its jurisdiction cannot be presumed.

This objection has been raised by appellant upon the ground that the Superior Court is an inferior Court, and that, therefore, nothing can be intended in favor of its jurisdiction, but that jurisdiction must be made to appear.

It is true that the Superior Court of the city of San Francisco is an inferior Court, and of limited jurisdiction, but it is only an inferior Court according to the Constitution of this State. According to the common law doctrine, it is not an inferior Court, but is a superior Court.

At common law, Courts are divided into Courts of record and not of record. Courts of record are superior Courts, and it is only those not of record that are inferior Courts.

Every matter is presumed to be within the jurisdiction of a superior Court until the contrary be shown, and nothing is so presumed in favor of the inferior Court, or Court not of record.

This doctrine was applied to the Municipal Court of the city of Chicago, in Beaubien *v.* Brinckerhoff, 2 Scammon, 269, in which the

exception was taken that the record did not, on its face, show a case within the jurisdiction of such Court.

The Supreme Court of Illinois decided, however, that the Municipal Court, being a Court of record, and therefore not an inferior Court, it was not necessary that its jurisdiction should be shown. It would be presumed.

The authority of this case is recognized by this Court in People v. Gillespie, 1 Cal., 342, where the Court, in delivering its opinion, says : " The Superior Court of the city of San Francisco has not jurisdiction in criminal cases, but as to civil actions, is entitled to the benefit of the intendment of law as to jurisdiction in Courts of record."

The 6th section of the Laws of 1850, (page 160,) creating the Superior Court, as well as section 83 of the Act of 1853, (page 287,) expressly provide that it shall be a Court of record.

And in Seale v. Wardwell, 5 Cal., 70, this Court recognizes not only the decision in People v. Gillespie, but the jurisdiction given by the Act of 1850.

This Court, having expressly declared on the oral argument of this case, that it would not consent to extend the jurisdiction of the Superior Court beyond that given by the Act of 1850, and that it regarded the Act of 1853, enlarging its jurisdiction, as unconstitutional, the argument, therefore, that follows is based solely upon the Act of 1850, in the hopes that though, as already intimated by the Court, the order on the appellant was a nullity, yet the Court will decide this appeal upon the merits, and thus put an end to future litigation.

It is said that the Superior Court is one of inferior and limited jurisdiction, but, as above stated, it is only inferior in a constitutional point of view, and is only limited in point of locality.

It is a Court of limited jurisdiction, since its jurisdiction is confined solely to the boundaries of the city of San Francisco, but within those boundaries it is a Court of unlimited jurisdiction in civil cases; that is, it is unlimited as to the subject matter over which it has cognizance. It is in all respects like the Municipal Court of the city of Chicago. See Beaubien v. Brinckerhoff, 2 Scammon, above cited.

In this respect, it is like the District Court of the United States which in ex parte Graham, 4 Wash. C. C. R., 211, was decided to be a Court both of limited and unlimited jurisdiction—limited in its boundaries but not limited in its subject matter over which it had jurisdiction.

So, also, in Griswold v. Sedgwick, 1 Wendell, 126, it is held that though the Circuit Court of the United States is a Court of limited, yet it is of general jurisdiction, its limitation being only as to the parties who can litigate in it.

It may be argued that every Court is a Court of limited jurisdiction, which is restrained either by the Constitution or by statute, from jurisdiction of actions where the amount in controversy is less than a certain specified sum. If this be so, then the District Courts of this State are equally Courts of limited jurisdiction ; which will hardly be urged.

In Pennsylvania, the District Courts have no jurisdiction where the

Meyer v. Kalkmann.

sum is less than $100, yet it has been held that they are Courts of general civil and not of limited jurisdiction. McLaughlin v. The District Court, 5 Watts and Serg., 272.

But further : The proceeding against the appellant was a collateral one against an outsider, and the rule is well settled that in such a proceeding no mere objection, like the one here raised, can prevail.

You may prove by proper evidence that they had no jurisdiction, but you cannot question their jurisdiction merely because they do not show it of record. This was settled in McCormick v. Sullivan, 10 Wheaton, 192 ; also, in Ruckman v. Cowell, 1 Comstock, 507.

II. But it is further alleged that the Superior Court had no power to make the order of April 14th, 1856, appointing the receiver, and directing the assignment, so far as the same would extend to property out of the city of San Francisco. It is difficult to conceive any just ground upon which this objection can rest.

At the time of the institution of the suit by Meyer v. Kalkmann, both parties were within the city of San Francisco, and both were subject to the jurisdiction of the Court—Meyer by bringing the action, and Kalkmann by the service of the summons on him.

Again, the Superior Court was a Court of Equity, possessing all the powers of such a Court, and had full right to make the order of April 14. The expression, " civil cases," in the statute of 1850, § 4, imports *ex vi termini*, legal as well as equitable—civil as contradistinguished from criminal.

Our Practice Act recognizes no distinction between legal and equitable suits, and § 1 provides but one form of action for all civil cases.

Whatever doubt may have existed as to the right to appoint receivers, it has been removed by the amendments of 1854, to the Practice Act, (see § 143,) which provides for the appointment of a receiver in such cases as are in accordance with the practice of Courts of equity jurisdiction. If, therefore, this power be given, it must be taken that it is given with all the effect which Courts of equity give to such appointments.

III. If the views above taken be correct, then it follows that in all civil cases the Superior Court is a Court of concurrent jurisdiction with the District Courts, and the rule of law applies that the Court which first takes cognizance of the subject matter, retains it as against all other Courts of equal jurisdiction. Averill v. Str. Hartford, 2 Cal., 308 : Smith v. McIver, 9 Wheaton, 532 ; Matter of O'Brien, 1 Ashmead, 82 ; Cooper v. Canal Co., 2 Murphy, 195; Brooks v. Delaplaine, 1 Maryland Ch. Dec., 351; Winn v. Albert, 2 Maryland Ch. Dec., 42 ; Gould v. Hayes, 19 Ala., 438.

The opinion of the Court was delivered by Mr. Justice HEYDENFELDT. Mr. Chief Justice MURRAY and Mr. Justice TERRY concurred.

The Legislature, in creating the Superior Court of the city of San Francisco, acted under power given it in the Constitution, " to establish such municipal and other inferior Courts as may be deemed necessary."

From the expression of this clause, taken together with the constitutional distribution of judicial power, the Courts to be created could only be of inferior, limited and special jurisdiction.

The jurisdiction of a municipal Court must necessarily be confined to the municipal territory for which it was especially created, and the Legislature has no power to extend its jurisdiction, so as to let its process run beyond its territory.

The Act giving such power to the Superior Court, is therefore invalid.

The order made against the appellant is reversed.