## GEORGE COURTWRIGHT *v.* THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY.

Jurisdiction of Action to Abate Nuisance.—The District Courts of this State have jurisdiction of actions to prevent or abate nuisances.

Concurrent Jurisdiction of Actions to Abate Nuisance.—Actions to prevent or abate nuisances are cases in equity, and the grant in the Constitution to the County Courts of original jurisdiction in such actions, does not deprive the District Courts of concurrent jurisdiction under their equity powers.

Concurrent Jurisdiction.—The grant of original jurisdiction, in the Constitution, to a particular Court, of a class of cases, without any words excluding other Courts from exercising jurisdiction in the same cases, does not necessarily deprive other Courts of concurrent jurisdiction in such cases.

Case Overruled.—*Zander* v. *Coe,* 5 Cal. 230, commented on and overruled in part.

Case Commented on and Disapproved.—*Caulfield* v. *Stevens,* 28 Cal. 118, commented on, and its dicta as to concurrent jurisdiction disapproved of.

Cases Commented on and Approved.—*Conant* v. *Conant,* 10 Cal. 249, and *Perry* v. *Ames,* 25 Cal. 383, commented on and approved.

Appeal from the District Court, Fourteenth Judicial District, Placer County.

After the answer had been filed, a jury trial was had, and plaintiff obtained a verdict for damages. Defendant then moved the Court, before judgment had been entered, to dismiss the action for want of jurisdiction. The Court granted the motion, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Charles A. Tuttle,* for Appellant, argued that Section 8 of Article VI of the Constitution did not confer on County Courts exclusive jurisdiction of actions to abate nuisances; that the word "original" before jurisdiction in said section only referred to jurisdiction in the first instance, as distinguished from appellate; and that actions to abate nuisances were "cases in equity;" and that Section 6 of Article VI, which conferred on the

District Courts original jurisdiction in all cases in equity gave them concurrent jurisdiction with the County Courts in actions to abate nuisances; and that the doctrine laid down in *Zander* v. *Coe*, that the Constitution distributed among the several Courts their powers without any concurrent jurisdiction, was not founded in reason or authority.

*George Cadwalader*, for Respondent, argued that the general grant of jurisdiction to the District Courts would be sufficiently broad to include an action to abate a nuisance if such jurisdiction had not been expressly given to the County Courts; and that the grant of jurisdiction in such actions to the County Court was exclusive; and that the whole drift of the Constitution discountenanced concurrent jurisdictions, and showed that it was the intention to vest County Courts with the exclusive control of those cases over which they were given jurisdiction.

He argued that the fact that before the amendments to the Constitution in 1863, District Courts possessed exclusive jurisdiction in nuisance cases, and that by the amendments such jurisdiction was conferred on County Courts, showed that it was intended that the County Courts should have exclusive jurisdiction. He also argued that the spheres in which the District and County Courts moved were dissimilar, and that there could be no concurrent jurisdiction. In support of these propositions he cited *Zander* v. *Coe*, 5 Cal. 230, and *Caulfield* v. *Stevens*, 28 Cal. 118.

By the Court, RHODES, J.:

The complaint avers that the plaintiff, in 1861, became, and from thence has been, and still is the owner and in the possession of the tract of land described; that he inclosed and cultivated the same and has an orchard and vineyard thereon; that the defendant with force and arms entered upon the land, and by means of a ditch excavated across the land by the defendant, caused large quantities of muddy water to flow over large

portions of the land, whereby they were rendered unfit for cultivation, and the trees, vines and crops thereon were destroyed; that the defendant has almost daily repeated said acts, by means whereof the profits of the land have been lessened and the plaintiff has sustained five thousand dollars damages; that all of said acts were committed wrongfully and forcibly, and the defendant threatens to continue to commit them; that the ditch is an obstruction to the plaintiff's use of his said land, and a nuisance. The prayer is for judgment for five thousand dollars damages; that the defendant may be enjoined from causing the water to flow over said land; that the ditch may be declared a nuisance and be abated; and for general relief. The answer denies the material allegations of the complaint. The District Court held that it had no jurisdiction of the action, and ordered it to be dismissed. The ground upon which the decision is based is that the District Court has no jurisdiction of the action, because jurisdiction of an "action to prevent or abate a nuisance" is specially granted to the County Courts by Section 8 of Article VI of the Constitution.

The portion of Section 6, Article VI, defining the civil jurisdiction of the District Courts, is as follows: "The District Courts shall have original jurisdiction in all cases in equity; also in all cases at law which involve the title or possession of real property or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand exclusive of interest, or the value of the property in controversy, amounts to three hundred dollars." The grant to the County Courts of original jurisdiction in civil cases is in the following terms (Art. VI, Sec. 8): "The County Courts shall have original jurisdiction of actions of forcible entry and detainer, of proceedings in insolvency, of actions to prevent or abate a nuisance, and of all such special cases and proceedings as are not otherwise provided for."

A nuisance is defined by the statute (Practice Act, Sec. 249) as "anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of

property, so as to interfere with the comfortable enjoyment of life or property." This definition is perhaps more comprehensive than that given by Blackstone, (3 Black. Com. 216) which is, "anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." Injuries occasioned by wrongfully causing or permitting the water from water ditches to flow upon or over the lands or mining claims of others, have always been treated in this State as nuisances, and actions to prevent or abate such nuisances are of every day occurrence.

At common law, an action on the case for the damages was the usual remedy for the injuries occasioned by the nuisance—the other forms of action having gone into disuse; but in that action the nuisance could not be ordered to be abated. (1 Chitty Plea. 133; 3 Black. Com. 220.) Where the injury was such that it could not be adequately compensated by damages at law, or its nature was such that it would be a constantly recurring grievance, resort could be had to a Court of equity, which would afford the proper relief by injunction or an order that the nuisance be abated. (2 Sto. Eq. Juris. Secs. 921, 926.) An action to prevent a threatened nuisance must, of course, have been brought in equity, as that Court alone was competent to administer the proper relief. The section of the statute above cited, defining a nuisance, declares it to be the subject of an action, and provides that it may be enjoined or ordered to be abated, and the judgment may also award damages for the injury. The relief that was attainable in equity must still be sought in that forum, for the statute has made no change in that respect, but has simply permitted the recovery of damages in the same action without resorting to a separate action at law—the claim for damages being treated as a mere incident to the main action. (*Hudson* v. *Doyle*, 6 Cal. 102.)

### Jurisdiction of actions to abate nuisances.

This action is substantially an action to abate a nuisance, and, as such, is clearly and unmistakably comprised among

"cases in equity" and included in the grant of jurisdiction to the District Courts. At the same time jurisdiction of the action to abate a nuisance is by express enumeration given to the County Courts. (*People ex rel. Blood* v. *Moore*, 29 Cal. 427.)

The defendant holds that the grant of jurisdiction to the County Courts is exclusive, because the whole drift of the Constitution seems to discourage concurrent jurisdiction and because the grant of jurisdiction to the County Courts is specific, and thus constitutes an exception to the grant in general terms to the District Courts; and for authority reliance is mainly placed on *Zander* v. *Coe*, 5 Cal. 230, and *Caulfield* v. *Stevens*, 28 Cal. 118.

No argument can be drawn from the Judiciary Act of 1863, for the civil jurisdiction of each Court is defined in the same terms as in the Constitution, without the addition of any words tending to indicate an intention on the part of the Legislature to limit or more accurately define the jurisdiction of either Court; and the repetition in the Act, of the same terms in which jurisdiction is conferred, lends no aid to the construction.

It will be noticed that the question here is not the same as that presented in *Zander* v. *Coe*, or *Caulfield* v. *Stevens*. There the question was whether it was competent for the Legislature to confer upon certain Courts—Justices of the Peace—jurisdiction of a subject matter that was vested by the Constitution in other Courts; and here the question is whether one Court possesses jurisdiction of a subject matter specially allotted to it by the Constitution, to the exclusion of another Court to which jurisdiction is given in general terms, there being no words of exclusion in either case.

In *Zander* v. *Coe*, Mr. Justice Heydenfeldt, in delivering the opinion of the Court, said: "The sixth Article of the Constitution seems to have been drawn with great care and skill, and, as far as possible in an organic law, endeavors to establish a complete judicial system. It not only provided for the

73

establishment of the several tribunals in which the judicial power of the new government was vested, but also distributed among those tribunals their several powers." After mentioning the several Courts and the powers of each, and stating that the powers enumerated embraced all cases of ordinary judicial cognizance, he says : " All these cases are distributed among the several Courts by the Constitution itself, and nothing is left for the Legislature to do in granting or defining jurisdiction." And it was held that as there was a limitation of the jurisdiction of the District Courts, by which they were excluded from taking cognizance of cases wherein the matter in dispute did not exceed two hundred dollars, exclusive of interest, it was only cases involving less than that sum that the Legislature was permitted to intrust to Justices of the Peace.

It is a matter of some doubt whether that Article deserved the commendation of having been drawn with great skill, and as establishing a system in which the judicial power was completely distributed to the respective Courts to be exercised by them exclusively; but there is less question that the same cannot be said of the Article as it now stands. The action of forcible entry and detainer—whether regarded as an action to recover the possession of land, with damages as a mere incident, or an action for the recovery of damages and, as an incident, the possession of the land—where the value of the land or the amount of the damages claimed exceeded two hundred dollars, is a marked instance in opposition to the theory of a complete distribution of judicial power by the former Constitution ; and although such a case is clearly within the jurisdiction granted to the District Courts, yet in many cases, both prior and subsequent to *Zander* v. *Coe*, the jurisdiction of Justices of the Peace of those actions, vested in them by the Legislature, has been uniformly upheld. Another instance is afforded by the Superior Court of San Francisco, which was established by the Legislature of 1850, and was vested with the same original jurisdiction within the limits of the City of San Francisco, in civil cases, as is or may be conferred by law

upon the District Court.   The Acts of 1851 and 1853, reorganizing that Court, conferred upon it jurisdiction to about the same extent as the Act of 1850.   In *Meyer* v. *Kalkman*, 6 Cal. 582, the point was pressed by counsel with great earnestness that the Acts organizing the Court were, in respect to the jurisdiction conferred, unconstitutional, but the Court waived that question, although it was apparent that the case was within the jurisdiction of the District Court, and decided it on the point that the process could not run beyond the territorial limits of the Court.   But in *Hickman* v. *O'Neal*, 10 Cal. 292, the question was fully met, and it was held that it had been put to rest on the doctrine of *stare decisis;* and the Court added : " We think it might have been placed, if thought necessary, upon broader ground.   Upon principle and authority the constitutionality of that Act might be safely rested."

There are other classes of cases that strongly militate against the proposition of a complete and definitive distribution by the former Constitution, of the judicial power ; and among others, actions for divorce may be mentioned, which were the subject of consideration in *Conant* v. *Conant*, 10 Cal. 249 ; and without questioning the grounds upon which the decision in that case was placed, claiming for that Court appellate jurisdiction in cases of that character, it would seem to be exceedingly difficult to construe the words of the grant of jurisdiction to the District Courts, " all civil cases, where the amount in dispute exceeds two hundred dollars exclusive of interest," in such a manner that they comprehend a suit for a divorce. Such was the opinion of the Legislature of 1851, for at that session, jurisdiction of actions for divorce was conferred upon the District Courts by the statute.

Original jurisdiction of proceedings by mandamus certainly did not fall to the Supreme Court by constitutional allotment, but yet that Court entertained jurisdiction of such a case in *Downer* v. *Norton*, 16 Cal. 436.   A very convincing, if not the strongest argument, against the doctrine of *Zander* v. *Coe*, may be drawn from the practical construction of the clauses of the Constitution relating to the judicial powers, given by

all the Courts from their first organization, in respect to the jurisdiction of the action of ejectment. It has been conceded on all hands that the District Courts alone possessed jurisdiction, though the value of the land was less than two hundred dollars, and the claim for rents and profits and damages was merely nominal.

It is unnecessary to proceed further to show that the cases are numerous which stand opposed to, or are inconsistent with, the idea of the complete distribution by the Constitution of judicial power among the several Courts, and of their exclusive jurisdiction of all the subject matters committed to them.

It would be more difficult to sustain that position in respect to Article VI as amended in 1862. That it was intended that the jurisdiction conferred upon the several Courts of record should be exclusive as against Justices of the Peace, is apparent from the proviso in section nine, that the powers of Justices of the Peace, as fixed by the Legislature, " shall not in any case trench upon the jurisdiction of the several Courts of record;" but it is worthy of notice that no analagous provision is made as between the several Courts of record. There is in principle no more impropriety or greater inconsistency in granting to the several Courts organized under any government concurrent jurisdiction, to a greater or less extent, than there is in giving to the several Courts of the same order and grade the same authority over any given cause or subject matter of litigation. And yet the largest portion of cases within the jurisdiction of the District Courts may be heard by such one of the several District Courts as the plaintiff may select. This is carried even further in respect to the District Courts of San Francisco, all of which possess, without objection from any quarter, the same jurisdiction in every respect. In *Delafield* v. *The State of Illinois*, 2 Hill, 164, Mr. Justice Bronson, in an opinion distinguished for its clearness and force, says : " There is nothing in the nature of jurisdiction, as applied to Courts, which renders it exclusive. It is not like a grant of property, which cannot have several owners at the same time. It is a matter of common experience that two or more Courts may

have concurrent powers over the same parties and the same subject matter. Jurisdiction is not a right or a privilege belonging to the Judge, but an authority or power to do justice in a given case when it is brought before him. There is, I think, no instance in the whole history of the law where the mere grant of jurisdiction to a particular Court, without any words of exclusion, has been held to oust any other Court of the powers which it before possessed. Creating a new forum with concurrent jurisdiction may have the effect of withdrawing from the Courts which before existed, a portion of the causes which would otherwise have been brought before them; but it cannot affect the power of the old Courts to administer justice when it is demanded at their hands." The Courts that may exercise appellate powers and the subject matters intrusted to each are sufficiently indicated and defined, but the lines dividing the original jurisdiction of the several tribunals are not accurately drawn. And perhaps entire accuracy may not be attainable or desirable. Jurisdiction is not distributed uniformly on the basis either of the form of the action or of its subject matter, or of the value of the property or the amount of the demand in controversy, but each serves as a test as occasion may require. Thus the District Court has jurisdiction of a case in equity, without regard to the subject matter or the value of the property or the amount of the demand; also of a case, whether at law or in equity, which involves the title of real property without regard to the value of property; also of a case either at law or in equity for the recovery of property of any description, so only that it amounts to three hundred dollars in value.

This want of a uniform test of jurisdiction would almost necessarily lead to a concurrent jurisdiction to some extent among the several Courts. Take the case of an action in which the plaintiff has his election to proceed either at law or in equity, in which the property in controversy does not amount to three hundred dollars in value. If the plaintiff proceeds in equity the District Court has jurisdiction (*People* v. *Mier*, 24 Cal. 61; *Bell* v. *Crippen*, 28 Cal. 327); but if he

elects to bring his action at law, it cannot be brought in that Court, but it may be commenced before a Justice of the Peace —there having been granted to Justices of the Peace by the Legislature, under the authority of the Constitution, the requisite jurisdiction. The District Court, or a Justice of the Peace, may take judicial cognizance of an action for the recovery of damages for injuries to the person, accordingly as the plaintiff lays his damages in good faith at three hundred dollars or upwards, or is satisfied to proceed for a sum less than three hundred dollars. There are many matters that we need not pause to specify that would usually and properly pertain to the Court exercising probate powers, as involved in the settlement of the estates of deceased persons, that may form the subject matters of suits in equity and be properly litigated in the District Court. The action of forcible entry and detainer, it was held in *Caulfield* v. *Stevens*, involves, and its primary object is, the recovery of the possession of real property. The party injured by the forcible entry and detainer may therefore seek redress by an action of ejectment in the District Court, where he may have judgment for the possession of the lands, as well as for damages for their detention. If, however, he seeks a remedy by what is usually considered a more summary process, and commences an action of forcible entry and detainer, he may bring his action in the County Court. The subject matter of the two actions is substantially the same, but the jurisdiction of the County Court is dependent upon the form of the action adopted by the plaintiff. The action of forcible entry and detainer, mentioned in the amended Constitution, was an action of frequent use in many of the States long anterior to the adoption of the Constitution of this State; and soon after that time, it was more fully defined by the Act of 1850, and prescribed as a remedy in the cases mentioned in that Act. It was a form of action with features as clearly marked as those of the action of debt or trespass at common law, and as such, jurisdiction of it was given to the County Courts; but as already remarked, concurrent remedies still existed, both for the recovery of the

possession of the land, and of the damages for its detention, of which the District Courts had jurisdiction. But, notwithstanding jurisdiction is thus conferred upon the County Courts, we do not undertake to say that the action is not comprehended within the terms of the grant of jurisdiction to the District Courts; for it would be difficult to maintain that the mention of the form of the action, is more significant of exclusive jurisdiction, than is the subject matter.

The plaintiff relies with great confidence upon *Perry* v. *Ames*, 25 Cal. 383, in support of the theory of concurrent jurisdiction, and it would seem to be difficult to successfully attack that theory, without overthrowing the doctrine of that case. We are of the opinion that the doctrine is correct, and that the decision in the case of *Conant* v. *Conant*, 10 Cal. 249, upon which *Perry* v. *Ames* was principally based, must be sustained, unless we are prepared to say that under the sixth Article of the Constitution as it then was, the Courts of the State were so constituted that they were powerless to afford any remedy in very many cases of what are considered as wrongs, and for which corresponding remedies are provided in every civilized community. The sixth section of the Article, as amended, gives to the Supreme Court original jurisdiction to issue writs of mandamus, but the same power is not expressly and in terms conferred upon the District Courts, and it was held that the entire jurisdiction was not thereby vested in the Supreme Court, but that the District Courts also possessed power to issue the writ. No argument in support of exclusive jurisdiction can legitimately be drawn from the manner in which the jurisdiction is conferred—whether it is sought to be accomplished by the specification of the subject matter, the form of the action, or the value of the property in controversy, or by any other mode that does not necessarily imply that the grant to another tribunal would be contradictory or repugnant. It is impossible to see how the mention of a subject matter of jurisdiction affords any stronger reason in favor of exclusive power of the Court to which jurisdiction is given than does the mention of a form of action—

as mandamus, certiorari, or prohibition.   If the original juris-
diction of the County Courts was defined as extending to all
cases in equity, would it be claimed that the District Courts
were thereby ousted of their jurisdiction in equity?   If it
would not—and there would appear to be no just ground for
such a claim—how does the grant of jurisdiction over a cer-
tain class of cases in equity become more significant of an
exclusive jurisdiction of that class?

By the Federal Constitution and the Judiciary Act of 1789,
the jurisdiction of the Courts of the United States was pre-
scribed and defined, and in most cases it was made dependent
upon the character of the parties, or one of them, and still the
State Courts, which before the adoption of the Constitution
had jurisdiction of such cases, as well as those of the States
since organized, have continued to exercise judicial power
over a large portion of those cases (Kent Com. 343, 345.)
Suits between aliens and citizens, and between resident citi-
zens of different States, the jurisdiction of which is given to
the Federal Courts by the Constitution, are as clearly excep-
tions to the " all actions at law and suits in equity " of which
the State Courts have jurisdiction, as are " actions to prevent
or abate a nuisance " exceptions to " all cases in equity ;" and
the grant to the Federal Courts is no less specific than that to
the County Courts.

There is an apparent conflict between *Perry* v. *Ames* and
*Caulfield* v. *Stevens*, and· if the latter case had been decided
mainly on the second ground discussed, or if the question
passed on necessarily arose in the case, we might be called
upon to say which course of reasoning we would follow and
which case must fall.   But in *Caulfield* v. *Stevens* the question
was, had the Legislature competent authority to vest jurisdic-
tion of the action of forcible entry and detainer in Justices of
the Peace ?   And when it was said that the Constitution pro-
vides that the County Courts—which were Courts of record—
shall possess jurisdiction of the action, and that it is therein
further provided that the powers conferred upon Justices of
the Peace by the Legislature shall not trench upon the juris-

diction of Courts of record, the question was fully answered. The question whether the County Court possessed exclusive jurisdiction of the action, or jurisdiction concurrently with the District Court, did not necessarily arise. But in *Perry* v. *Ames* the question as to the concurrent jurisdiction of the District Courts with the Supreme Court lay at the very threshold of the case and demanded solution; and it was solved, as must be the question before us, in favor of concurrent jurisdiction. The *dictum* in *Caulfield* v. *Stevens* must yield to the *decision* in *Perry* v. *Ames*. There is nothing in the character of the jurisdiction granted, that suggests its exclusive exercise by the County Courts; there are no words of exclusion coupled with the grant; the District Courts are at least as safe and competent depositaries of the power as the County Courts; its concurrent exercise by the District Courts will evidently be more conducive to the public interest than its exclusive exercise by the County Courts; and the grant of concurrent jurisdiction of the actions in question is not contradictory or repugnant to any provision in the Constitution. And such seems to have been the views both of the bench and the bar in this State, as is evidenced by the cases of that character brought in the District Court and which have come before us on appeal, and by the large number of cases, as we have good reason to believe, that have terminated in the District Courts. (See *American Company* v. *Bradford*, 27 Cal. 360; *Hill* v. *Smith*, 27 Cal. 476; *Blanc* v. *Klumpke*, 29 Cal. 156; *People* v. *Davidson*, *ante* 379.) Where the construction practically given, and quite generally acquiesced in, is as reasonable as the opposite one, we are well justified, as was done in *Perry* v. *Ames*, in looking to the consequences to grow out of the enforcement of a construction contrary to that which has been acted upon for a considerable period of time. The question ought to be very clear of doubt before we should declare in effect, by our judgment, that all the proceedings had in the District Courts in actions to prevent or abate a

74

nuisance, since January 1st, 1864, were *coram non judice* and void.

Judgment reversed, and the cause remanded for further proceedings.

Mr. Justice SANDERSON expressed no opinion.