## GEORGE L. GREATHOUSE, RESPONDENT, *v.* ALBERT HEED AND GEORGE RUNDELL, APPELLANTS.

STATUTORY CONSTRUCTION.—When we know the reason which alone determined the will of the law-makers, we ought to interpret and apply the words in a manner suitable and consonant to that reason, and as will be best calculated to effectuate the intent.

IDEM.—The prior state of the law will sometimes furnish the clue to the real meaning of the ambiguous provision of a statute.

JURISDICTION—Before a court, clothed with jurisdiction of a person or subject-matter, can be ousted of it by the creation of another forum, having the same power, the grant of jurisdiction to the latter must contain words of exclusion.

IDEM—PROVISO.—A proviso in a statute is to be strictly construed. Its province is not to enlarge or change the purpose of the enacting clause; and its terms may be limited by the general scope of the enacting clause to avoid repugnancy.

· ˌˌˌM.—It is a maxim of interpretation that, in ambiguous things, such a construction is to be given to a statute, that what is inconvenient and absuˑˑ ˑ to be avoided.

JURISDICTˑ. ˑˑ—PROBATE COURTS—DISTRICT COURTS.—The act of congress, approveˑˑ ˑcember 13, 1870, giving jurisdiction to the probate courts in certain caseˑ ˑdoes not confer exclusive jurisdiction upon those courts in

such cases. It does not take away the jurisdiction of the district court therein, but the power of the district courts and the probate courts is by said act made concurrent in certain cases.

STATUTORY CONSTRUCTION—PROVISO.—Some effect should be given to a proviso in a statute, if possible; but if, by doing so, the manifest intention of the act, as gathered from its general scope and the circumstances connected with its passage, will be defeated; or, should the meaning of the proviso be such as to leave the court in doubt respecting its aim, then there is no alternative but to reject it as of no validity.

LEGISLATIVE POWER.—When the act of congress of December 13, 1870, had invested the probate courts with enlarged jurisdiction, it was competent for the territorial legislature to limit and define its character, and to extend it, except as to the amount involved. It was, therefore, competent for the legislature to provide that the jurisdiction of the district and probate courts, in certain cases, should be concurrent, as is provided by its act of January 11, 1871.

APPEAL from the second judicial district, Ada county.

Action commenced in the district court upon a promissory note for the recovery of a sum within the jurisdiction of the probate court. The plaintiff had judgment.

*J. Brumback,* for the appellants.

*Prickett & Hasbrouck,* for the respondent.

HOLLISTER, J., delivered the opinion, WHITSON, J., concurring specially. NOGGLE, C. J., dissented.

This case is brought here from the district court of Ada county, and the question pointed out for consideration is this: Does the act of congress of the thirteenth of December, 1870, confer exclusive jurisdiction in all civil cases when the amount in controversy does not exceed the sum of five hundred dollars, exclusive of interest, upon the probate court of the territory?

The act is as follows: "That probate courts of the territory of Idaho in their respective counties, in addition to their probate jurisdiction, be and they are hereby authorized to hear and determine all civil causes wherein the damages or debt claimed does not exceed the sum of five hundred dollars, exclusive of interest, and such criminal cases arising under the laws of the territory as do not require the intervention of a grand jury. Provided, that

they shall not have jurisdiction in any matter in controversy, where the title, boundary, or right to the peaceable possession of land may be in dispute, or in chancery or divorce cases; and, provided further, that in all cases an appeal may be taken from any order, judgment, or decree of said probate courts to the district court."

Section 2. "And be it further enacted, that all acts, and parts of acts, inconsistent with this act,. are hereby repealed. Provided, that this act shall not affect any suit pending in the district courts of said territory at the time of its passage."

Had the question been made to depend upon the title of the act, or the enacting clause, there would have been no difficulty in solving it; for it is clear there is nothing in either, which by any known rule of interpretation, would lead to the conclusion that congress intended to take away the jurisdiction of the district courts with which they had been clothed by the organic act, and to give it to these inferior courts exclusively. It is claimed, however, that the proviso in the act, that it shall not affect any suit pending in the district courts at the time of the passage, necessarily means that, except as to such suits, the probate courts are alone authorized to hear and determine all civil cases embraced within the act.

Sedgwick, on Constitutional and State Laws, page 228, says: "The reason of the law, that is to say, the motive which led to the making of it, and the object in contemplation at the time, is the most certain clue to lead to the discovery of its true meaning." On page 272, he further says: "When once we certainly know, the reason which alone has determined the will of the person speaking, we ought to apply the words in a manner suitable to that reason alone." Says Blackstone, in the third volume of his Commentaries, page 236: "That as to the subject-matter, words are always to be understood as having regard thereto; for that is supposed to be in the eye of the legislator, and all his expressions are directed to that end." And on page 237: "The most universal and effectual way of discovering the true meaning of a law, where words are dubious, is by consider-

ing the reason and spirit of it, or the cause which moved the legislator to enact it."

When we know the reason which alone determined the will of the law-makers, we ought to interpret and apply the words in a manner suitable and consonant to that reason, and as will be best calculated to effectuate the intent. The prior state of the law will sometimes furnish the clue to the real meaning of the ambiguous provision. (Cooley on Const. Limitations, 65.) Having regard to these maxims, it becomes important to examine the previous legislation of congress, and also of the territory, on the subject, with a view to determine the reasons which may fairly be presumed to have governed congress in passing the act in question.

By the organic act creating the territory, provision was made for the establishment of supreme, district, probate, and justices' courts, and for giving to the district courts full chancery, criminal, and common law powers. By this act the jurisdiction of probate courts was confined to matters relating to the probate of wills and the settlement of estates, etc.; and that of justices' courts to such cases as might be confided to them by the laws of the territory within the limits prescribed by the organic act.

On the first day of February, 1864, an act was passed by the territorial legislature, providing that the district courts should have original jurisdiction in civil cases, when the amount in dispute exceeds one hundred dollars, etc. By the same act, original jurisdiction was given to probate courts: 1. Of actions to enforce the liens of mechanics and others; 2. Concurrent jurisdiction with the district courts in all civil actions where the amount in controversy shall not exceed eight hundred dollars.

The jurisdiction of justices' courts was also prescribed by the same act, limiting it so as to meet the requirements of the organic act. This was the condition of the law, as it related to the powers of the several courts, so far as it is necessary to consider it in this connection, until August, 1866, when the act attempting to confer civil jurisdiction upon probate courts was decided by the supreme court of the

32

territory to be invalid, because of the want of power in the territorial legislature to confer it.

By this decision, the benefits which it was the design of the legislature to secure to the people by this enlarged jurisdiction of the probate courts, were lost, and they were then thrown back upon the district courts, as the only tribunals in which actions exceeding the jurisdiction of justices' courts could be brought. This was found to be detrimental to the public interests owing to the infrequency of the terms of these courts, there being in some counties but two and in others but one term each year; to provide a remedy for this end, the act in question was passed.

Looking then at the evil of the original system, and the means necessary to remedy it, as well as to the policy of congress and the territorial legislature in respect to the constitution and powers of the judicial department, it is difficult to discover a reason for changing its structure, so radically as to take from the district courts a power which they had always possessed, under the belief that it was essential to the interests of the people, and give it to other courts, which until then had been confined to a jurisdiction of an entirely different character. Before a court clothed with jurisdiction of a person or subject-matter can be ousted of it, by the creation of another forum having the same power, the grant of jurisdiction to the latter must contain words of exclusion. "A mere grant of jurisdiction to a particular court without words of exclusion as to other courts, previously possessing like powers, will only have the effect of constituting the former a court of concurrent jurisdiction with the latter." (*Dellafield* v. *The State of Illinois*, 2 Hill, 160.) To the same effect in the case of *Cartwright* v. *B. R. & N. W. & M. Co.*, 30 Cal. 573. In the case of *Sterritt* v. *Robinson*, 17 Iowa, 61, the supreme court of Iowa say: "The jurisdiction of the district court, which is a superior court of general original jurisdiction, can only be taken away by express words or irresistible implication. No mere negative words will oust the jurisdiction of the superior tribunal." In *Rex* v. *Morley*, 2 Burr. 1040, under a statute which provided that no other court whatsoever intermed-

dle with any cause or causes of appeal upon this act, but they shall be finally determined by the quarter session only, the court of king's bench held that that court shall never be ousted of its jurisdiction without express words, adding that the jurisdiction of this court is not taken away unless there be express words to take it away. And so the supreme court of New York, in *Ex parte Heath and others*, 3 Hill, 42, held, that under a charter which gave to the common council of the city of New York the sole power of determining and deciding all elections of all corporate offices, and that each board shall be the judge of the qualifications of its own members, the supreme court was not ousted of its jurisdiction to supervise the proceedings of such council. Cowan, J., says: "The phraseology of a statute designed to oust this court of its jurisdiction of inferior tribunals, must express the intent with such clearness as to leave no room for doubt; mere negative words will in no case answer."

From these authorities it will be seen that the doctrine is well settled, that before a court of general original jurisdiction can be ousted of it, the statute must contain words of exclusion, or its language must be so free from ambiguity as to leave no doubt of the intention of the legislature. Can this be said of the act in question? It is conceded by the counsel for the appellant that the enacting clause will not bear such construction, and that it is only by the help of the proviso, that such meaning can be gathered from it. This proviso clause does not by any fair construction amount to words of exclusion, nor does it imply them necessarily.

It is to be remembered that a proviso is to be strictly construed, that its province is not to enlarge or change the purpose of the enacting clause, and that its terms may be limited by the general scope of the enacting clause to avoid repugnancy. If the enacting clause had in terms made the jurisdiction of the probate courts exclusive, the proviso would have been important. It would have defined the class of cases to which the act applied, and would have taken from its operation suits that were then pending in the

district courts. The two sections would have been consistent with each other, clear and unambiguous in phraseology, and would unmistakably have declared the intention of congress to change its policy in relation to both the probate and district courts. When, however, its meaning is doubtful, or when the construction sought to be given to it makes the law inconvenient or changes its purpose, courts have no alternative but to construe the enacting clause according to its natural and ordinary import, without regard to the proviso.

It is a maxim of interpretation that in ambiguous things such a construction is to be made that what is inconvenient and absurd is to be avoided. (4 Inst. 328.) It is also a rule in the construction of contracts, that when words are manifestly inconsistent with the purpose and object of a contract, they will be rejected. This rule is equally applicable to statutes.

The first section of the act simply gives to probate courts the power to hear and determine all cases that may be brought before them, without taking jurisdiction of the same subject-matter from the district court. The power of the two courts is made concurrent, and the law meets the wants of the people, inasmuch as it furnishes an additional tribunal, whose terms are held more frequently, and in which the rights of parties may be more speedily determined, leaving them, at the same time, to choose the forum which seems fitted to meet their wants, and in this way the delay necessarily attending litigation, under the former system, may be avoided; on the other hand, if the proviso is to give effect to the enacting clause which is claimed for it, the people will be compelled to resort to one tribunal alone for the redress of their grievances, without any choice of forum; and courts must conclude that the whole policy, both of the territorial and national governments, in respect to the judiciary of the territory, has hitherto been a mistaken one, because it has failed to meet a need which this law alone can supply.

It is claimed that under the rule that effect must be given to the words used by the legislatures, the court can not re-

ject the proviso as meaningless, but must give it some interpretation which will render it intelligible, as expressing the legislative will. This undoubtedly should be done if possible, so as not to defeat the manifest intention of the legislature gathered from the general scope of the act and the circumstances connected with its passage. Should this be its effect, or should its meaning be such as to leave the court in doubt respecting its aim, then there is no alternative but to reject it as of no validity. We think, however, that it is safe to hold that this proviso was inserted in the act merely as an affirmation of the general principle that by the change in the law suits pending at its passage in the district courts should in no way be affected by it. It was merely a precautionary measure, designed to guard against any misconstruction as to its effect upon such suits, and inserted out of abundant caution by the person who framed the bill.

There is a further consideration which it seems should not be overlooked, and which it is thought important as throwing light upon the question. Congress, by the organic act, clothed the territorial legislature with power to legislate upon all rightful subjects. This carries with it the authority to legislate upon all subjects which, in the opinion of the legislature, the public welfare demands. The exercise of this power must, of course, be in subordination to the constitution of the United States, the laws passed in pursuance thereof, and the principles of natural practice, but within such bounds it is unlimited.

In pursuance of such authority, the legislature, on the eleventh day of January, 1871, passed a law which provides that probate courts shall have concurrent civil jurisdiction with the district courts to hear and determine civil cases wherein the debt or demand claim does not exceed five hundred dollars, and concurrent jurisdiction in all cases with justices' courts. This act was passed after the law of congress under consideration went into effect, and doubtless with a full understanding of its provisions. Its design was to carry out the purpose of the law of congress, and to define more fully the manner in which this enlarged jurisdic-

tion of the probate courts should be exercised, as well as to prescribe its limits.

Before the passage of the act of congress, the legislature had no power to enlarge this jurisdiction, but when the act had invested these courts with it, it was competent for the legislature to limit and define its character and extent, except as to the amount involved, for it is seen the act took no power from the legislature in any other respect. It could, as it did, make the jurisdiction of the probate courts a concurrent one with that of the district courts, for there is nothing in the act which expressly, or by necessary implication, forbids it. Besides prescribing the nature of their jurisdiction in the manner pointed out, the legislature went on to provide for holding the terms of these courts, defining their practice for taking appeals, and for the fees to which the judge should be entitled.

The legislature, while keeping within bounds of its authority, prescribed the mode in which their new jurisdiction should be exercised so as to give to the people all its advantages without taking from them the right to resort to the other courts of the territory whenever they might choose to do so.

This opinion may not perhaps be thought complete without adverting to the consequences which would necessarily follow to justices' courts, were the construction which is contended for adopted by the court. The act would effect the entire overthrow of their civil and criminal jurisdiction. There is no saving clause in their favor. The act is broad enough to comprehend both them and the district courts, if either, and as effectually excludes the jurisdiction of the one as the other, without saving from its operation suits which might be pending in the justices' courts; there is no intendment that can be indulged in, that will save from its operation the one and not the other.

If the jurisdiction be exclusive as to one, it must be as to both, and the act goes to the extent of substituting a new jurisdiction, exclusive in its character, for both the old ones, to the extent of five hundred dollars, exclusive of interest, and under.

We are of the opinion that the jurisdiction of the probate courts derived from the act in question is only concurrent with that of the district courts, and that the judgment of the court below must be affirmed.

WHITSON, J.   I concur in the foregoing opinion and judgment, although in a similar case, tried before me in Boise county, I held to a different view of the law.   I am satisfied, after a more thorough examination of the question, that my first view of the law was incorrect, and that the view of the law as taken by Justice Hollister, in the case at bar, was correct.

## ON PETITION FOR A REHEARING.

WHITSON, J.   We have carefully examined the petition for a rehearing in this case, and see no reason why one should be granted.   Some questions are raised which were not argued upon the hearing already had, but we do not think the positions taken by the petitioner are tenable.   Section 32 of the civil practice act, we think, fully authorizes just such a judgment as was given in this case.

As to the point that plaintiff avers no order, but avers in lieu of such order an indorsement and delivery to him of the note, it is a well-known principle of the law merchant, that a bare and naked indorsement is sufficient to pass all the interest of the payee in such a note, and after that, whoever held the note would be *prima facie* the owner.   Plaintiff alleges that the payee, Ish, indorsed the note and delivered it to him, and if he was, at the time of bringing the suit, the holder, the presumption must follow that he was the owner.   We do not think the allegation that the plaintiff was the owner and holder of the note was a conclusion of law; yet, if it were so, that allegation was mere surplusage, and there was a complete case stated in the complaint without it.

Rehearing denied.